UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chris Langer,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Nancy L. Nenow and Does 1-10,<br><br>　　　　　　　　　　Defendants. | Case No.: 18-cv-01670-GPC-BGS<br><br>**AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, DISMISSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING THE ACTION.**<br><br>**[ECF No. 16, 18.]** |

On January 10, 2020, the Court decided two motions: Defendants'[1] motion to dismiss Plaintiff's first cause of action arising under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., as moot and to dismiss Plaintiff's second cause of action arising under California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51–53, for lack of supplemental jurisdiction, (ECF No. 18), and (2) Plaintiff's motion for summary

---

[1] W.K.S. Frosty Corporation ("WKS"), as Defendant Nancy L. Nenow's lessee, attests that it is responsible to maintain the Restaurant and its property, and to indemnify Defendant Nenow in litigation. (ECF No. 18-4, Feinour Decl. at ¶ 3.) Thus, the Court refers to Defendant Nenow and WKS collectively as "Defendants."

1

judgment on both causes of action. (ECF No. 16.) The Court granted Defendants' motion in full and dismissed Plaintiff's motion as moot. (ECF No. 26.)

As part of its ruling as to the first motion, the Court ordered that Plaintiff's second cause of action be remanded to state court. (*Id.*) Now, the Court VACATES its January 10, 2020 Order pursuant to Federal Rule of Civil Procedure 60 as the relief ordered by the Court was clearly erroneous. Fed. R. Civ. Pro. 60(b)(1) (permitting a court to grant relief from an order in the event of a "mistake"); *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quotation omitted) ("A district court may properly reconsider its decision if it . . . committed clear error"). Federal "district courts do not have the authority to remand an action originally commenced in federal court." *Azodi v. TEPL, Inc.*, No. 12-CV-3069-IEG, 2013 WL 3751869, at *2 (S.D. Cal. July 15, 2013) (quotation omitted); *see also First Nat. Bank of Pulaski v. Curry*, 301 F.3d 456, 467 (6th Cir. 2002) ("while a district court has the discretion to remand a case removed from state court, it may not remand a case that was never removed from state court"); *Julianites Against Shakedown Tactics v. Tejjr*, No. 05-CV-2353-W, 2007 WL 3490253, at *4 (S.D. Cal. May 1, 2007) ("As a matter of legal procedure, this Court lacks the ability to remand or remove an original action to state court"). Because this action was originally filed in this district, (*see* ECF No. 1), it cannot be remanded to state court.

The Court now issues this ruling as to the two outstanding motions. (ECF Nos. 16, 18). For the reasons stated below, the Court **GRANTS** Defendants' motion, **FINDING** that the first cause of action is moot and **DISMISSING** the second cause of action as the Court declines to exercise jurisdiction over it. The Court also **DISMISSES** Plaintiff's motion for summary judgment for lack of jurisdiction.

**I. Background**

Plaintiff Chris Langer ("Plaintiff") is a paraplegic who cannot walk and who uses a wheelchair for mobility. (ECF No. 16-4, Langer Decl. at ¶ 2.) He has a specially equipped van with a ramp that deploys from the passenger side to accommodate his

2

wheelchair. (*Id.* at ¶ 3.)

On April 10, 2018, Plaintiff went to a Wendy's located at 1111 Camino del Rio South, San Diego, California (the "Restaurant") to eat and use the restroom. (*Id.* at ¶ 5.) The Restaurant is located less than ten minutes from Plaintiff's home and is a convenient place for him to eat. (*Id.* at ¶ 11.) Upon arriving, Plaintiff observed approximately thirty parking spaces in the Restaurant's parking lot, with only one parking stall marked and reserved for persons with disabilities. (*Id.* at ¶ 6.) Because a car was already parked in that spot, and it was too difficult for Plaintiff to park without using a space specifically reserved for persons with disabilities, Plaintiff left without parking, eating, or using the restroom. (*Id.* at ¶¶ 7–10.)

On July 19, 2018, an investigator for Plaintiff, Zion Sapien, investigated the Restaurant. (ECF No. 16-7, Sapien Decl. ¶ 3.) Mr. Sapien counted approximately 29 total parking spaces available for use by the Restaurant's customers. (*Id.* at ¶ 5.) Mr. Sapien noted that only one space was marked as reserved for persons with disabilities. (*Id.*; ECF No. 16-8, Photos from Sapien Investigation.) Based on his own observations, and Mr. Sapien's investigation, Plaintiff filed a complaint against Defendant Nancy L. Nenow, the owner of the property located at 1111 Camino del Rio South in San Diego, CA, and Does 1–10. (ECF No. 1.)

On December 17, 2018, Defendants hired an ADA-expert, Mr. Paul Deppe, "to advise WKS with regard to the design of a new, second accessible parking stall." (ECF No. 18-4, Feinour Decl. at ¶ 4.) Defendants did so "in response to allegations within the Plaintiff's complaint." (*Id.* at ¶ 4.) Defendants hired a construction company to build the stall according to Mr. Deppe's specifications. (*Id.* at ¶ 5.) Upon completion, Mr. Deppe inspected the parking lot and issued Defendants a Certified Access Specialist ("CASp") "certificate noting that all exterior elements [of the Restaurant and parking lot] were in compliance with state and federal access laws." (*Id.* at ¶¶ 6–7; ECF No. 18-6, CASp Certificate.)

In May 2019, Plaintiff's expert, Mr. Paul Bishop, also inspected the parking lot. (ECF No. 18-4, Feinour Decl. at ¶ 8.) Mr. Bishop issued a report of his inspection finding that the lot was largely in compliance. (*Id.* at ¶ 9–10.) Mr. Bishop found two deficiencies – an access aisle that was a few inches too narrow and a tow away sign that was missing information. (*Id.* at ¶¶ 11–13.) Defendants then remedied these errors by directing an employee to add the missing information to the sign on July 3, 2019 and hiring a construction professional to restripe the access aisle on November 8, 2019. (*Id.* at ¶¶ 14–17.) On November 11, 2019, Mr. Deppe returned to the Restaurant for a second inspection, "found all exterior features to be compliant with state and federal access regulations, and issued a CASp certificate so stating, dated Nov. 13, 2019." (*Id.* at ¶¶ 18–19; ECF No. 18-8, CASp Certificate.)

Defendants have since "instructed the Restaurant's General Manager to inspect the condition of the accessible features of the Restaurant on a regular basis, and to report and/or repair any feature that requires maintenance." (*Id.* at ¶ 20.) Defendants further aver that "prompt action" will be taken "to ensure continued compliance with state and federal accessibility regulations." (*Id.*)

## II. Legal Standards

### A. Summary Judgment under Federal Rule of Civil Procedure ("Rule") 56

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of

evidence to support the moving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**B. Mootness[2]**

Federal courts are creatures of limited jurisdiction. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). Every federal court has a continuing obligation to assure its jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 763 (9th Cir. 2018). "Mootness is a

---

[2] Notably, Defendant moves the Court for dismissal under Rule 12(b)(1) and frames its argument as a question of standing. However, Defendant "conflates the concepts of standing and mootness." *Ngoc Lam Che v. San Jose/Evergreen Cmty. Coll. Dist. Found.*, No. 17-CV-00381-BLF, 2017 WL 2954647, at *3 (N.D. Cal. July 11, 2017). "Standing and mootness are distinct issues that underlie whether the Court has jurisdiction under Article III to adjudicate a case and are separate from the merits of the claims asserted." *CRS Recovery, Inc. v. Laxton*, No. C-06-7093 CW, 2013 WL 140084, at *7 (N.D. Cal. Jan. 10, 2013). "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1116 (9th Cir. 2003) (quotations and citation omitted). Thus, because Defendant challenges the current condition of the Property, rather than its condition when the complaint was filed, the challenge is properly characterized as one based on mootness.

jurisdictional issue." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Id.*

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). But voluntary cessation can yield mootness if a "stringent" standard is met: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The party asserting mootness bears a "heavy burden" in meeting this standard. *Id.*

To determine whether a danger of future violations warrants an injunction in an ADA lawsuit, courts consider "the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Watanabe v. Home Depot USA, Inc.*, No. CV-02-5088-RGK, 2003 WL 24272650, at *4 (C.D. Cal. July 14, 2003) (*quoting United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Courts are more likely to find a matter moot on the basis of a voluntary cessation where the defendant remedies a "structural modification." *Zaldivar v. City of San Diego*, No. 15-CV-67-GPC, 2016 WL 5118534, at *10 (S.D. Cal. Sept. 21, 2016). Such modifications are limited to physical alterations to the property at issue. *See, e.g.*, *Lopez v. AND Grp. Corp.*, No. CV 18-4855-PSG, 2019 WL 6434493, at *3 (C.D. Cal. July 30, 2019) (the re-grading and re-painting a parking lot); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 98 (D.D.C. 2007) (the installation of a wheelchair accessible sink); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005) (the installation of grab bars).

**C. Supplemental Jurisdiction**

Under 28 U.S.C. § 1367(c), a court can decline to assert supplemental jurisdiction over a pendant claim if one of the following four categories applies: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Underlying the § 1367(c) inquiry are consideration of judicial economy, convenience and fairness to litigants, and comity. "[I]f these are not present a federal court should hesitate to exercise jurisdiction over state law claims[.]" *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

A "district court can decline jurisdiction under any one of [the] four provisions" of § 1367(c). *San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998). When a district court declines supplemental jurisdiction over a state law claim pursuant to one of the first three provisions of the statute, the court need not state its reasons for dismissal. *Id.* Thus, while the elimination of all federal claims gives the court "a powerful reason to choose not to continue to exercise jurisdiction," the court's decision to retain or dismiss the remaining supplemental claims is discretionary. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351–57 (1988).

### III. Analysis

#### A. Plaintiff's First Cause of Action Arising Under the ADA is Moot.

The Court begins its analysis with Defendants' motion to dismiss. Defendants contend that the case is moot because it has cured the deficiencies outlined in Plaintiff's complaint and asserts that such deficiencies are not reasonably likely to recur. (ECF No. 18-1 at 9–14; ECF No. 25 at 2–5.) Plaintiff only cursorily objects to the efficacy of Defendants' remedial actions, and instead argues that the Court should retain jurisdiction over its motion for summary judgment even if the parking lot is ADA-complaint because there is no guarantee Defendants will continue to comply. (ECF No. 23 at 6–13.) For the

7

18-cv-01670-GPC-BGS

following reasons, the Court agrees that Defendants have remedied Plaintiff's allegations and that the first cause of action is now moot.

Reviewing the evidence, the Court finds there is no genuine dispute that Defendants' conduct has fully addressed Plaintiff's allegations in the complaint. While Plaintiff briefly asserts – without any citations or reference to legal authority – that the proof submitted by Defendants is inadequate in the absence of a CASp report, Plaintiff is mistaken. (*See* ECF No. 23 at 7.) Here, Defendants' proof is sufficient. Defendants have submitted a signed affidavit attesting to its efforts to construct a second, van-accessible, ADA-complaint parking stall and to address the related "exterior elements" of the Restaurant. (*See* ECF No. 18-4, Feinour Decl.) Defendants have also submitted Mr. Bishop's expert report, which notes the post-construction painting and signage deficiencies, as well as Mr. Deppe's declaration, which shows that Defendants corrected those deficiencies. (ECF Nos. 18-5 at 9; ECF No. 18-7 at ¶¶ 5–6.) In addition, the two CASp certificates,[3] (ECF Nos. 18-6, 18-8), as well as the various photos of the Restaurant parking lot contained in Mr. Bishop's expert report, (ECF Nos. 18-5 at 5–8), show that Defendants' renovated lot complies with the ADA. Based on this evidence, the Court finds that Defendants' efforts have cured the alleged violations.

The Court, moreover, finds that the "allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. Two cases are particularly instructive here as they consider similarly situated Defendants who also allegedly violated the ADA's regulations on parking stripes.

First, in *Dalton*, a Minnesota plaintiff visited defendant's gas station, found no reserved accessible parking spots or van parking spaces, and filed an ADA complaint.

---

[3] Oddly, both certificates bear the same inspection certificate number and inspection date. *Compare* (ECF No. 18-6) *with* (ECF No. 18-8). Nonetheless, though Defendants have filed duplicate certificates, the Court does not discount Defendants' argument as the most recent of the two certificates has been submitted, and Mr. Feinour avers to obtaining two certificates. (ECF No. 18-4, Feinour Decl. at ¶ 7.)

8

*Dalton v. JJSC Properties, LLC*, No. 19-CV-522-SRN, 2019 WL 3802893, at *1 (D. Minn. Aug. 13, 2019). After receiving plaintiff's complaint, defendant hired an ADA expert to examine the parking area and then implemented the expert's recommendations. *Id.* at *2. Those changes addressed Plaintiff's allegations, as was evident from defendant's expert report, affidavits, and photographs. *Id.* at *4–5. Consequently, upon defendant's motion to dismiss, the Court found the alleged ADA violations were moot, citing defendant's "lack of prior complaints," "expeditious actions to remedy the alleged violations," and "assurances . . . that the offending conduct is not reasonably likely to recur." *Id.* at *5. The *Dalton* Court specifically considered and rejected plaintiff's argument "that because paint is impermanent and subject to fading, [d]efendant ha[d] not sufficiently shown how it [would] maintain the remedied conditions." *Id.*

Second, in *Lopez*, a California plaintiff visited a liquor store where he observed that "the paint and striping" on the parking lot's reserved spaces "were badly faded and barely visible." *Lopez v. AND Grp. Corp.*, No. CV-18-4855-PSG, 2019 WL 6434493, at *1 (C.D. Cal. July 30, 2019). In response to Plaintiff's complaint regarding the paint stripping, defendant hired a Certified Access Specialist ("CASp") to inspect the liquor store, hired a contractor to fix any identified deficiencies, hired a second contractor when the first proved inept, and re-hired the CASp to re-inspect the property once renovated. *Id.* "[L]ooking at Plaintiff's complaint, [the CASp's] declaration, and his two CASp reports together," the court determined that the defendant's remedial conduct had cured the plaintiff's allegations. *Id.* at *3. Consequently, upon defendant's motion to dismiss, the Court found the alleged ADA violations were moot, citing defendant's lack of prior ADA violations, efforts to make the parking lot ADA-complaint, "expressed intent to comply with ADA requirements," and "implementation of an annual inspection policy." *Id.* at *4. Here too, the *Lopez* Court specifically considered and rejected plaintiff's argument that "Defendant may fail to maintain the accessible parking spaces by letting the paint to fade away or painting them over once the case ends." *Id.* at *3.

9

The Court finds that the same factors animating the decisions in *Dalton* and *Lopez* show that Defendants' violations here are not reasonably likely to recur. First, as with *Lopez* and *Dalton*, there is no allegation that defendants' have ignored their own, existing ADA-compliant policy, or repeatedly violated the ADA. *Cf. Lozano v. C.A. Martinez Family Ltd. P'ship*, 129 F. Supp. 3d 967, 971 (S.D. Cal. 2015) (rejecting defendant's motion to dismiss where they had constructed compliant parking space after settling a prior ADA lawsuit and were now again in violation). Second, Defendants have instructed the Restaurant's management to regularly inspect the Restaurant for, and promptly fix, ADA violations, and aver that they will take prompt action going forward to ensure continued compliance. (ECF No. 18-4, Feinour Decl. at ¶ 19.) Third, though unsuccessful at first, Defendants tried to resolve Plaintiff's complaint "expeditious[ly]" by building a new parking space within approximately six months of the complaint's filing date. *Dalton*, 2019 WL 3802893, at *1 (D. Minn. Aug. 13, 2019).

In light of these facts, the Court is not persuaded by Plaintiff's argument that "because the parking lot striping will fade and will need to be repainted every few years, it is very easy for the defendants to return to their previous ways." (ECF No. 23 at 11–12.) Plaintiff's cited cases are factually distinguishable from Defendants' violations in that Defendants' violations have not been remedied by actions that could be undone almost immediately, including, by hiring a worker that could be easily fired, *see Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 388 (4th Cir. 2011) (where defendant's cure involved hiring someone to provide captioning), or by adopting new policies that could be "rescind[ed]" at any time. *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 860 (N.D. Cal. 2011). Rather, Defendants' actions here – e.g., building a new parking space, painting lines and an access aisle, and putting up signs – are more akin to "structural modifications" unlikely to be easily reversed. *See Zaldivar*, 2016 WL 5118534, at *10.

In addition, that the *Moeller* court treated "parking striping" as "subject to frequent change" is not dispositive here. *Moeller*, 816 F. Supp. 2d at 862. The court's finding in

*Moeller* was based on three facts not in evidence here: (1) express testimony from defendant's former employee that certain practices *at that defendant*, including paint striping, were subject to frequent change, (2) an upcoming renovation scheduled for *that specific restaurant* that might entail re-painting the stripes, and (3) an interrogatory response from defendant that it would be too burdensome to describe all alterations to the restaurant as they were so frequent. *Id.* Here, there is no testimony as to a similar policy at Defendants' Restaurant or evidence of an upcoming renovation. And, Defendants' interrogatory response to the number of past alterations to the Restaurant is merely that "Defendant is unaware of any alterations." (ECF No. 16-11 at 1–2.)

Thus, considering the parties' arguments and the applicable law, the Court finds that Plaintiff's ADA allegations are now moot, and that the Court no longer has jurisdiction to hear the first cause of action in Plaintiff's complaint.

### B. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's Unruh Claim and Dismisses it.

The Court must also decide whether to retain supplemental jurisdiction over the second cause of action now that the first has been found moot. Defendants contend that the Court should dismiss the Unruh claim because the ADA claim is moot, while Plaintiff maintains that jurisdiction over the Unruh claim is appropriate regardless of the state of the ADA claim given the procedural posture of the case. (*See* ECF No. 18-1 at 15–16; ECF No. 23 at 12–27; ECF No. 25 at 6–8.)

Here, the Court declines to extend jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), the Court "has dismissed all claims over which it has original jurisdiction" and may now decline to hear the first cause of action. Also, as the Court has found that Defendants remedied the alleged wrongful conduct such that it is not reasonably likely to recur, Plaintiff's insistence that the Court now retain jurisdiction and enforce the state law claim's damages remedy suggests that the state law claim "substantially predominate[d] over the" now-moot ADA claim. *See* 28 U.S.C. § 1367(c)(2). Declining to exercise

supplemental jurisdiction, moreover, is consistent with how courts of this district have addressed comparable situations arising in Plaintiff's most recent ADA suits. *See, e.g.*, *Langer v. 6830 La Jolla Blvd., LLC*, No. 3:19-CV-1790-GPC, 2020 WL 353601, at *4 (S.D. Cal. Jan. 21, 2020) (declining supplemental jurisdiction of Unruh claim); *Langer v. Deddeh*, No. 19-CV-1879-CAB, 2019 WL 4918084, at *2 (S.D. Cal. Oct. 4, 2019) (same); *Langer v. Petras*, No. 19-CV-1408-CAB, 2019 WL 3459107, at *2 (S.D. Cal. July 31, 2019) (same); *Langer v. Badger Co., LLC*, No. 18CV934-LAB, 2019 WL 2269951, at *3 (S.D. Cal. May 24, 2019) (same); *Langer v. Manuele*, No. 18-CV-00104-BEN, 2018 WL 3019946, at *3 (S.D. Cal. June 18, 2018) (same).

Consequently, the Court DECLINES jurisdiction over Plaintiff's second cause of action and DISMISSES it.

### C. Plaintiff's Motion for Summary Judgment is Dismissed.

In the absence of jurisdiction to hear either cause of action in Plaintiff's complaint, the Court cannot adjudicate Plaintiff's motion for summary judgment. Consequently, the Court DISMISSES Plaintiff's motion.

### IV. Conclusion

In light of the foregoing reasons, the Court **GRANTS** Defendants' motion. The Court **FINDS** that Plaintiff's first cause of action is moot and **DISMISSES** Plaintiff's second cause of action after declining to extend jurisdiction over it. (*See* ECF No. 18.) The Court also **DISMISSES** Plaintiff's motion for summary judgment as it no longer has jurisdiction to hear the motion. (*See* ECF No. 16.) This Action is thus hereby dismissed.

**IT IS SO ORDERED.**

Dated: February 12, 2020

Hon. Gonzalo P. Curiel
United States District Judge